Opinion issued July 11, 2002







 






In The

Court of Appeals

For The

First District of Texas






NO. 01-00-01420-CR






STANLEY BRUCE ROBERSON, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 344th District Court

Chambers County, Texas

Trial Court Cause No. 11170






O P I N I O N

 A jury convicted appellant, Stanley Bruce Roberson, of possession of cocaine
weighing 4 grams or more but less than 200 grams. The jury then found an
enhancement paragraph alleging prior felony theft convictions to be true and assessed
punishment at 33 years in prison. In the first of his three points of error, appellant
challenges the legal sufficiency of the evidence presented during the guilt/innocence
phase of trial. We reverse and acquit.

Background and Procedural History

 On the night of January 4, 2000, Trooper Jason Taylor of the Texas Department
of Public Safety was on routine patrol traveling eastbound on Interstate 10 in
Chambers County. Near the Trinity River Bridge, he noticed an older model Lincoln
with expired registration and inspection stickers and pulled it over at approximately
8:20 p.m. Because the stop was captured on videotape by the patrol car's onboard
camera, what occurred during the next thirty minutes before appellant was arrested
is not in doubt, but the legal implications of appellant's actions and the evidence
found at the scene is highly disputed. 

 Appellant was driving the car, his cousin, Diamond Lee, was in the front
passenger seat, and Coy Nixon was in the backseat. The trooper approached on the
passenger side and asked appellant to get out of the car. Appellant quickly complied. 
He and the trooper stood between the patrol car and the Lincoln and spoke. During
the initial questioning, appellant presented his valid driver's license to the trooper,
explained that he had borrowed the car from a person with the last name "Wilson,"
and, when asked, told the trooper there was no insurance information in the car. 

 Trooper Taylor then asked appellant to stand at the front of the patrol car,
several yards from the Lincoln, while Taylor questioned the passengers. Appellant
moved to the front of the patrol car and remained there for the duration of the stop. 
Trooper Taylor testified that, throughout the stop, appellant was composed, gave no
resistance, did not appear to be intoxicated or under the influence of drugs, and had
a pleasant personality. 

 The trooper had Lee get out on the passenger side of the two-door car and
questioned him about the purpose of the trip. Lee was allowed to return to the car
because he seemed unsteady and Trooper Taylor suspected he was under the
influence of something. The passenger side door remained open throughout the rest
of the stop. The trooper then asked Nixon, the backseat passenger, to get out on the
driver's side of the car. After getting out and shutting the door behind him, Nixon 
was questioned and consented to a pat-down search that turned up nothing. At this
point, having briefly checked the car and the surrounding area with his flashlight, the
trooper did not observe any narcotics. He returned to appellant and told him that he
would check his license and just write him a ticket for the inspection violation if
everything came back clear. Trooper Taylor then returned to the Lincoln and told
Nixon that he could sit back down in the car. Nixon returned to the backseat through
the passenger side door. The trooper walked back to appellant and began writing out
a citation.

 A few minutes later, before he had issued a citation, the trooper asked
appellant's permission to search the car. Appellant agreed, and then was asked to
consent to a pat-down search and a search of his pockets. Appellant again agreed,
and the trooper found nothing illegal during these searches of appellant's person. The
trooper then had Lee get out of the car. He briefly questioned Lee and told him to
stand away from the car. He then had Nixon step out of the car and performed a
search of his person. He found two bottles on Nixon that he suspected contained
PCP. 

 Some time after finding the bottles on Nixon, the trooper saw a half "cookie" (1)
of crack cocaine on the roadway a few inches from the car on the passenger side. He
subsequently saw a full "cookie" of crack cocaine on the passenger side floorboard
near the door. The combined weight of the cocaine was nearly 24 grams.

 Nixon, Lee, and appellant were placed under arrest. After being advised of his
rights, appellant denied any knowledge of the drugs. The three were then taken to a
highway patrol office, where they were searched. The troopers recovered a small
plastic bag from Lee's underpants that contained a white residue that tested positive
for cocaine. They also recovered $700 from Lee. Nixon had $83 dollars and five
rocks of crack cocaine in his possession. No drugs or money were recovered from
appellant, and a police check on the Lincoln confirmed that he was not the owner of
the car.

 Appellant and Lee were tried together. Both were charged with possession of
cocaine with intent to deliver. Neither defendant presented any evidence after the
State rested. The jury charge authorized conviction if appellant was the principal
actor or a party to an offense. Lee was convicted of the charged crime, while
appellant was found guilty of the lesser included offense of possession of cocaine. 

Applicable Law

 In his first issue, appellant argues that the evidence was legally insufficient to
support his conviction for cocaine possession. Appellant also challenges the factual
sufficiency of the evidence in his second issue for review. When both the legal and
factual sufficiency of the evidence are challenged, we must first review the evidence
under the legal sufficiency standard. Harmond v. State, 960 S.W.2d 404, 406 (Tex.
App.--Houston [1st Dist.] 1998, no pet.) (en banc opinion); see Clewis v. State, 922
S.W.2d 126, 133 (Tex. Crim. App. 1996). In evaluating the legal sufficiency of the
evidence, we must view the evidence in the light most favorable to the verdict and
determine whether any rational trier of fact could have found the essential elements
of the offense beyond a reasonable doubt. King v. State, 29 S.W.3d 556, 562 (Tex.
Crim. App. 2000). Although our analysis considers all evidence presented at trial, we
may not re-weigh the evidence and substitute our judgment for that of the jury. Id. 

 A person may not be convicted of possession of a controlled substance, as a
principal actor, unless (1) he exercised actual care, control, or custody of it, and (2)
he was conscious of his connection with it and knew what it was. Brown v. State,
911 S.W.2d 744, 747 (Tex. Crim. App. 1995); see Tex. Health & Safety Code
Ann. §§ 481.102(3)(D), 481.115(a) (Vernon Supp. 2002). One need not have
exclusive possession of the drug. Harvey v. State, 487 S.W.2d 75, 77 (Tex. Crim.
App. 1972). 

 To prove that a defendant is criminally responsible for possession of a
controlled substance as a party, the evidence must first show that another person
possessed the contraband. Woods v. State, 998 S.W.2d 633, 636 (Tex. App.--
Houston [1st Dist.] 1999, pet. ref'd). Then the State must show that, with the intent
to promote or assist the commission of the offense, appellant solicited, encouraged,
directed, aided, or attempted to aid the other's possession. Tex. Pen. Code Ann. §
7.02(a)(2) (Vernon 1994); Woods, 998 S.W.2d at 636. The mere presence at a place
where contraband is being used or possessed by others does not justify finding that
a person is in joint possession or is a party to an offense. Martin v. State, 753 S.W.2d
384, 386 (Tex. Crim. App. 1988); Whitworth v. State, 808 S.W.2d 566, 569 (Tex.
App.--Austin 1991, pet. ref'd). 

Affirmative Link

 When, as here, the accused is not in exclusive possession of the place where
contraband is found, there must be additional independent facts and circumstances
which affirmatively link the person to the contraband in such a way that it can be
concluded that the accused had knowledge of the contraband and exercised control
over it. Deshong v. State, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981); Dickerson
v. State, 866 S.W.2d 696, 700 (Tex. App.--Houston [1st Dist.] 1993, pet. ref'd);
Whitworth, 808 S.W.2d at 569. An affirmative link generates a reasonable inference
that the accused knew of the contraband's existence and exercised control over it. 
Johnson v. State, 658 S.W.2d 623, 627 (Tex. Crim. App. 1983); Dickerson, 866
S.W.2d at 700. Proof of an affirmative link between the accused and the contraband
is mainly needed to establish knowledge or intent. Brown v. State, 911 S.W.2d 744,
747 (Tex. Crim. App. 1995); see Hurtado, 881 S.W.2d 738, 743 (Tex.
App.--Houston [1st Dist.] 1994, pet. ref'd). 

 Courts have identified many non-exhaustive factors that may help to show an
affirmative link to contraband. (2) However, the affirmative link terminology does not
constitute a unique legal rule, but is only a shorthand way of expressing what must
be proven to establish that drugs were possessed knowingly or intentionally. Brown,
911 S.W.2d at 747. Indeed, the number of linking factors present is not as important
as the "logical force" they create to prove that the crime was committed. Hurtado,
881 S.W.2d at 743 (Tex. App.--Houston [1st Dist.] 1994, pet. ref'd); Whitworth, 808
S.W.2d at 569. 

Legal Sufficiency Analysis

 Our legal sufficiency analysis in this case turns on whether enough evidence
existed for any rational juror to find beyond a reasonable doubt that appellant had
knowledge of the presence of cocaine. Knowledge of the presence of cocaine is a
required element to show possession as a principle actor. Tex. Health & Safety
Code Ann. § 481.115(a) (Vernon Supp. 2002). Knowledge of the presence of
cocaine is also implicitly required to show that a party acted with the required intent
to promote or assist the possession of another. See Tex. Pen. Code Ann. § 7.02(a)(2)
(Vernon 1994); cf. Stephens v. State, 683 S.W.2d 23, 24 (Tex. App.--Dallas 1984),
aff'd, 717 S.W.2d 338 (Tex. Crim. App. 1986) (holding conviction as party for
aggravated rape required knowledge of threat made by others). 

 Appellant argues that the trial evidence did no more than prove he was the
unwitting driver of an automobile in which cocaine was being transported by others. 
The State, on the other hand, argues that sufficient evidence exists proving appellant
knowingly possessed the cocaine. It points to several factors that have helped to
show an affirmative link to drugs in other cases. Specifically, the State highlights
appellant's role as driver of the car, differences in the stories told by the three
occupants, appellant's relationship to Lee, changes in how appellant referred to
Nixon, the amount of drugs involved, and the relative ages of the car occupants. 

 Each case must be examined on its own facts. Hurtado, 881 S.W.2d at 743;
Whitworth, 808 S.W.2d at 569. A factor that contributes to sufficiency in one
situation may be of little value under a different set of facts. See Hurtado, 881
S.W.2d at 743; Whitworth, 808 S.W.2d at 569 (both courts emphasizing "logical
force" over mere presence of factors). We will examine all the factors possibly
linking appellant to the cocaine in turn.

Driver of the car 

 The State first points out that appellant was the driver of a car in which some
of the cocaine was found. Courts have often noted that this, when combined with
other evidence, can be sufficient to uphold possession convictions. See e.g.
Hernandez v. State, 538 S.W.2d 127, 131 (Tex. Crim. App. 1976); Gilbert v. State,
874 S.W.2d 290, 298 (Tex. App.--Houston [1st Dist.] 1994, pet. ref'd). However,
the evidence is not legally sufficient when the State merely shows that a defendant
was driving a vehicle containing narcotics. Harmond, 960 S.W.2d at 406. This is
consistent with the longstanding principle that the mere presence in the vicinity of
illegal drugs, although circumstantial evidence to be considered, is insufficient to
prove a possession charge by itself. Hurtado, 881 S.W.2d at 743; see Rhyne v. State,
620 S.W.2d 599, 601 (Tex. Crim. App. 1981); Harvey, 487 S.W.2d at 77. Thus,
appellant's status as the driver of the car is insufficient on its own to prove
possession, but may help show legal sufficiency if combined with other evidence.

Different Stories Among Occupants

 When questioned by Trooper Taylor, appellant said that the trio was returning
home to Beaumont from Houston. Lee and Nixon said the same thing. Appellant
said he had gone to Houston for a job interview with Wal-Mart. (3) Lee said he went
on the trip to visit his cousin. (4) Nixon said he went to a mall. Besides these different
accounts of the trip's purpose, there were also different departure times given by the
three. Appellant thought they left Beaumont around 1:30 or 2:00, Nixon said 1:00,
and Lee, who appeared to Trooper Taylor to be intoxicated, said 4:00. 

 Differing stories may rightly raise the reasonable suspicion of an alert state
trooper. See Leday v. State, 3 S.W.2d 667, 672 (Tex. App.--Beaumont 1999, pet.
ref'd); Walter v. State, 997 S.W.2d 853, 861 (Tex. App.--Austin 1999), rev'd on
other grounds, 28 S.W.3d 538 (Tex. Crim. App. 2000) (citing United States v.
Shabazz, 993 F.2d 431, 433 (5th Cir. 1993)). The State, though, does not argue how
these differences demonstrate an element of the crime for which appellant was
convicted. We have noted in prior cases that when car occupants give conflicting
statements about relevant matters this can be a factor helping to establish an
affirmative link. Hurtado, 881 S.W.2d at 743 n.1; Gilbert, 874 S.W.2d at 298. 
However, the actual facts of Hurtado and Gilbert did not involve any conflicting
statements. We will look instead to Duff v. State, where the Court of Criminal
Appeals first utilized this factor, and other analogous cases for guidance. 546 S.W.2d
283 (Tex. Crim. App. 1977).

 In Duff, the court affirmed the conviction of a car passenger for possession of
marihuana. The passenger told a police officer he was a hitchhiker who had been
picked up only five minutes before the car was stopped, while the driver said the
passenger had accompanied him from Corpus Christi to Austin. Id. at 284. The Duff
court described the conflict between the stories as a "circumstance implying guilt." (5)
 
Although the Duff court did not specifically elaborate on how the conflict implied
guilt, it probably viewed this as an attempt by the defendant to separate himself from
a potentially incriminating scene, somewhat similar to physical flight. Cf. Valdez v.
State, 623 S.W.2d 317, 321 (Tex. Crim. App. 1979) (holding flight alone is
insufficient to support guilty verdict, but is circumstance raising inference of guilt);
Johnson v. State, 773 S.W.2d 721, 727 (Tex. App.--Houston [1st Dist.] 1989, pet.
ref'd) (same). Even with these directly contradictory stories, the presence of a strong
marihuana odor in the car, and evidence suggesting marihuana seeds were on the
floorboard, the Duff court described the case as a "close one" when it found a
sufficient link between the appellant and the large amount of drugs in the car--a
thirty-pound box of marihuana in the back seat and even more marihuana in the trunk. 
Duff, 546 S.W.2d at 288.

 More recent narcotics cases have also examined inconsistent stories among car
occupants. In Dixon v. State, the driver and passenger contradicted each other
regarding the purpose of their trip. 918 S.W.2d 678, 680 (Tex. App.--Beaumont
1996, no pet.). The driver said the two were going to visit his sick mother, while
Dixon stated that they were going to see Dixon's sick sister. Id. Further, Dixon
stated that he knew the driver's mother, and she was doing fine. Id. The evidence
also showed that Dixon was extremely nervous, and there was an absence of luggage
for their claimed three-day trip. Id. at 681. The court held the evidence legally
insufficient to link Dixon to fifteen pounds of marihuana found in a guitar case in the
car's trunk. Id. at 681-82.

 In Davis v. State, a drug possession conviction was affirmed, but different stories
offered by car occupants appeared to play no part in the decision. 923 S.W.2d
781(Tex. App.--Beaumont 1996), rev'd on other grounds, 947 S.W.2d 240 (Tex.
Crim. App. 1997). Both the driver and passenger described a trip from New York to
Houston to explore real estate. Yet, while there was some evidence to suggest the
passenger was employed by the driver, the passenger described herself to an officer
as "just along for the ride." Id. at 784-85. The court mentioned the different stories
as reasons for suspicion when it analyzed the constitutionality of the stop, but the
opinion ignored any inconsistencies when discussing the legal sufficiency of the
evidence. Id. at 786-787, 788.

 Finally, in a similar case, the Corpus Christi Court of Appeals recently placed
little value on conflicting statements given by three occupants in a car pulled over on
Interstate 10 in Chambers County at approximately 8:30 p.m. Jenkins v. State, Nos.
13-00-602-CR & 13-00-605-CR, slip op. at 8, 13-14, (Tex. App.--Corpus Christi
April 19, 2002, no pet.). Although all three occupants, two of whom were cousins,
agreed they were returning from Houston, they gave conflicting stories about the
length of their trip, much as appellant, Lee, and Dixon did here. Id. at 13-14. The
court declared such inconsistencies about the length of the trip to be "not relevant"
and noted that any inconsistencies were "clearly less than those in Dixon." Id. The
court held the evidence was legally insufficient to show that Jenkins, a passenger in
the car, was guilty, either as a principal or a party, of possessing the 1,220 grams of
cocaine or the 103.65 pounds of marihuana found secreted in the car. Id. at 10, 16.

 Here, the differing statements highlighted by the State pertaining to the purpose
and length of the trip are not connected to appellant's knowledge of the presence of
the cocaine. (6) Neither were these statements potentially extraordinary attempts by the
car's occupants to distance themselves from the crime scene, as in Duff. The record
does not support that there were conflicting statements made on matters relevant to
the elements of the crime. Under our facts, the inconsistent statements made by the
car occupants do not help establish a link between appellant and the cocaine.

Relationship to Lee

 Lee described appellant as his cousin in response to questioning from Trooper
Taylor. Nixon also said appellant and Lee were cousins. No other evidence, except
for appellant describing Lee as a "friend," exists in the record to shed light on the
relationship between the two. The State argues that appellant's relationship to Lee
is factor linking appellant to the cocaine, which was found near Lee's seat. We
disagree. The State cites three cases for its proposition, but these cases are
distinguishable. 

 In D.R.H. v. State, a minor was found alone in a room within arms length of
small table on which cocaine was in plain view. 966 S.W.2d 618, 622 (Tex.
App.--Houston [14th Dist.] 1998, no pet.). While the opinion does list "the
accused's relationship to others with access to the contraband" as a factor to consider, 
the court appears to have considered family relationships only to show that the minor
had access to both sides of the duplex in which he was found--he lived on one side,
and his mother and cousin lived on the other side. Id. The opinion does not support
the use of a family relationship as a factor tending to link one to drugs that are found
near a relative.

 In Frierson v. State, 1448 grams of methamphetamine were found under the
bed in a bedroom shared by the appellant and his live-in girlfriend. 839 S.W.2d 841,
845 (Tex. App.--Dallas 1992, pet. ref'd). Neither was in the room at the time. The
court held that a jury could find at least joint possession of the drugs. Id. at 849. 
Even if we endorsed Frierson's implicit reasoning that sharing a bedroom
demonstrates shared possession of its contents, it would not affect the case before us
due to the great factual differences involved. Occupying a borrowed car temporarily
with one's cousin is not comparable to sharing a bedroom with a girlfriend. 
Appellant was not a joint possessor with Lee simply because they were cousins.

 The State also cites Redman v. State, where the accused was one of three men
seen standing within arms length of 21.9 grams of cocaine in plain view in a kitchen
sink. 848 S.W.2d 710 (Tex. App.--Tyler 1992, no pet.). Redman cites Hernandez
v. State, 538 S.W.2d 127, 130 (Tex. Crim. App. 1976) for the proposition that "an
affirmative link may be shown if the accused is closely related to other persons in
joint possession of the contraband or to those who owned or leased the premises
where the contraband was found." Redman, 848 S.W.2d at 714. The court then noted
appellant had maintained his friendship with the homeowner despite knowing that the
homeowner had previously been convicted for a cocaine offense and knowing the
house had been raided on other occasions. Apparently, the court reasoned that the
knowledge gained through the friendship could help the jury infer that Redman knew
that what he was looking at in the sink was cocaine. We do not think the Redman
court meant to imply that appellant's friendship with the homeowner led directly to
an inference of guilt. Such guilt by association would obviously be contrary to our
system of justice. See Wincott v. State, 59 S.W.3d 691, 700-701 (Tex. App.--Austin
2001, pet. ref'd) (discussing guilt by association); Martin, 753 S.W.2d at 386
(holding mere presence where others possess drugs is insufficient for conviction).

 Hernandez, the case relied on by the Redman court, is more analogous to our
facts. There, appellant was the driver of a car and his brother was the passenger. 
Hernandez, 538 S.W.2d at 129. Marihuana was seen in the passenger side floorboard
by the arresting officer. Id. at 129, 131. Additionally, there was drug paraphernalia
throughout the car, including on the dashboard in front of appellant. Id.

 No mention was made of the sibling relationship when the Hernandez court
catalogued the evidence weighing against appellant. Id. at 131. Rather, the only
mention of any family relationships is made when the court notes, without further
explanation, that the car belonged to appellant's uncle. Id. at 130. Possibly, the court
concluded the jury could infer appellant had some familiarity with the car given his
relationship to the owner. This rationale does not apply here because Lee was not the
owner of the Lincoln, and, in fact, the record tells us nothing about the owner of the
car except his last name. 

 Here, the evidence, even taken in the light most favorable to the prosecution,
suggested only that Lee was a cousin and friend of appellant. As we have shown, the
cases cited by the State do not suggest that familial or friendship relationships are
generally strong factors showing an affirmative link to contraband. While it is
reasonable for the jury to infer that appellant may have been more familiar with what
was in Lee's possession as opposed to knowing what a total stranger possessed, the
power of this inference can only be very slight under our facts. Appellant's
relationship to Lee does very little, by itself, to help to demonstrate that appellant had
knowledge of the drugs found near Lee. 

Denies Association with Nixon after Arrest

 The State notes that, when first questioned by Trooper Taylor, appellant
described the other occupants as "friends" of his. Later, after being arrested,
appellant said he really did not know Nixon and they had just "picked him up off the
highway." Appellant, however, did not deny his association with Lee, who had been
sitting in the passenger seat, nearest the locations where the cocaine was found. 

 The State argues that appellant's conduct demonstrates a consciousness of
guilt. We have previously noted that actions indicating a consciousness of guilt can
be considered as factors helping to affirmatively link one to contraband. Hurtado,
881 S.W.2d at 743 n. 1. The logical force of this factor depends on the nature of the
specific actions involved.

 Although no evidence was presented to clarify the relationship between
appellant and Nixon, we agree that the jury could have chosen not to believe
appellant's videotaped statement and inferred that appellant was attempting to
disassociate himself from Nixon. The situation is somewhat analogous to the
statement given by the passenger in Duff that we have previously discussed. See
Duff, 546 S.W.2d at 284 (passenger claimed to be hitchhiker). The jury could have
found that this indicated a general consciousness of guilt. 

 A general consciousness of guilt does not prove appellant guilty of the specific
crime with which he was charged. As with physical flight, this disassociation from
Nixon would not be sufficient on its own to prove appellant's knowledge of the
cocaine, but it could be considered in combination with other linking factors. Cf.
Valdez v. State, 623 S.W.2d at 321 (holding flight alone is insufficient to support
guilty verdict, but is circumstance raising inference of guilt); Johnson v. State, 773
S.W.2d at 727 (same). 

Amount of Cocaine

 The State asserts that the amount of drugs involved is a factor helping to link
appellant to the cocaine. The amount of contraband found is a factor we can consider
in determining if an affirmative link exists. Villegas v. State, 871 S.W.2d 894, 896
(Tex. App.--Houston [1st Dist.] 1994, pet. ref'd). The power of this factor can
reasonably be expected to increase as the amount of drugs increases. Thus, this factor
is more effective at establishing an affirmative link as larger quantities are involved. 
Cf. id. at 896-97 (90 pounds of cocaine and 165 pounds of marihuana found
throughout house); Sosa v. State, 845 S.W.2d 479, 483 (Tex. App.--Houston [1st
Dist.] 1993, pet. ref'd) (eighteen-wheel truck carrying 600 kilograms of cocaine
valued at over $60 million). 

 The cocaine found in the passenger side floorboard and outside the car
combined to weigh approximately 24 grams. There was testimony that this amount
of cocaine had a wholesale value of between $700 and $800 dollars and a retail value
between $2,500 and $2,800. Clearly, this was not an insignificant amount of cocaine,
but it was still small enough to be concealed on someone's person. We will consider
the amount of cocaine along with the other evidence. 

Relative Ages of the Car Occupants

 At the time of their arrests, appellant was 44 years old; Lee was 19; and Nixon
was 18. The State argues, without authority, that we should consider the fact that
appellant was significantly older than both Lee and Nixon as a factor linking
appellant to the cocaine. The State's theory is that the jury could infer from
appellant's older age that he was the leader of the three, and this leadership position
links him to the cocaine. (7) 

 However, the State's theory does not produce a reasonable inference. Before
the jury could presume that appellant was the leader of the group, it would have to
presume that the three were acting together as a group for a common purpose. There
was no evidence, beyond their mere presence in the car together, suggesting that the
three were working as a unit for any purpose. Another necessary presumption would
be that the group's purpose was to transport drugs. At this point the State's theory
becomes circular and conclusory--in order to prove that appellant knew of the drugs,
the State suggests that he was the leader of a drug transporting group. 

 In some circumstances, relative ages might be relevant to a drug possession
charge. For example, a prosecutor's assertion that an adult driver knew about drugs
found near a passenger would carry much more weight if the passenger was 2 years
old rather than 18. Here, however, all the occupants were adults and the State's
theory that appellant's older age somehow links him to the cocaine is groundless. 

Summary of Evidence and Conclusion

 In summary, appellant was the driver of a car containing two passengers; 24
grams of cocaine were later discovered in and near that car; the drugs were found near
where appellant's cousin, Lee, had previously been seated; and the jury could have
found that appellant displayed a general consciousness of guilt after his arrest when
he disassociated himself from Nixon. 

Our facts are similar to those of Heltcel v. State, 583 S.W.2d 791 (Tex. Crim.
App. 1979). There, Heltcel was the driver of a car containing two passengers. After
the car was pulled over for speeding, the officer noticed that the two passengers
appeared nervous. He asked the backseat passenger, who was feigning sleep, to sit
up. On the seat, under where the passenger was lying, were two brown paper bags
containing "bricks" of marihuana. There was no evidence of an odor in the car. No
other contraband was found in the car or on Heltcel's person. Heltcel did not make
furtive gestures or appear to be nervous. The court concluded there was "no proof
appellant had knowledge of the presence of contraband" and held the evidence legally
insufficient. Id. at 792. (8) 

Here, the fact that appellant was the driver of a car later found to contain
cocaine is suspicious. Appellant's relationship to Lee and his attempted
disassociation from Nixon might further raise suspicion. However, possession means
more than "being where the action is." Meeks v. State, 692 S.W.2d 504, 511 (Tex.
Crim. App. 1985) (quoting Wilkes v. State, 572 S.W.2d 538 (Tex. Crim. App. 1978));
Williams v. State, 859 S.W.2d 99, 101 (Tex. App.--Houston [1st Dist.] 1993, pet.
ref'd). Proof amounting only to strong suspicion or mere probability will not suffice. 
Dubry v. State, 582 S.W.2d 841, 844 (Tex. Crim. App. [Panel Op.] 1979); Grant v.
State, 989 S.W.2d 428, 433 (Tex. App.--Houston [14th Dist.] 1999, no pet.);
William, 859 S.W.2d at 101-102.

There is nothing else to link appellant to the cocaine. He was not under the
influence of drugs. In fact, no drugs of any kind, drug paraphernalia, or money was
found on his person or near the driver's seat. There was no drug odor in the car. 
Appellant was cooperative throughout the stop and made no furtive gestures. The
cocaine was not found until almost twenty minutes had passed since appellant got out
of the car at Trooper Taylor's request, while Lee and Nixon remained inside during
much of that time. No statements were made by any of the three connecting appellant
to the drugs. 

In short, the State has presented a collection of potential linking factors, each
of which might raise suspicion but is insufficient on its own to provide the required
affirmative link between appellant and the cocaine. These factors, even when viewed
together in the light most favorable to the verdict, do not create the logical force
necessary to allow a rational juror to find, beyond a reasonable doubt, that appellant
had knowledge of the presence of cocaine. 

We sustain appellant's first issue presented and hold the evidence was legally
insufficient to support the conviction. If a legal sufficiency challenge is sustained,
then a judgment of acquittal must be rendered. Clewis, 922 S.W.2d at 133.

 We, therefore, reverse the judgment and render a judgment of acquittal. (9) 


 Michael H. Schneider

 Chief Justice


 Panel consists of Chief Justice Schneider and Justices Radack and Duggan. (10) 

 Publish. Tex. R. App. P. 47.
1. A "cookie" is, as the term implies, a circular piece of crack cocaine that
is generally broken down into smaller units for retail sale. 
2. 
 
 
 
' 
 ' 
 ' 
 
 
 
 
3. When later asked how his interview went, appellant explained that he
missed the interview.
4. After his arrest, Lee stated that they had gone to Houston because
appellant had a job interview. 
5. Judge Phillips disagreed and stated, "[T]hese conflicting statements
cannot be equated with the passenger's knowledge that his driver is
carrying marihuana in the back seat or trunk." Duff, 546 S.W.2d at 289
(Phillips, J. dissenting).

6. We note that only the statements about the departure time are truly
contradictory. The other statements, regarding the purpose of the trip,
differ, but it is not inconceivable that all of the stated activities could
have been a part of the trip.
7. A counter-argument could be made that the age difference indicated a
generational separation between appellant and the two young
passengers--possibly suggesting that appellant was unaware of the drug
activity. While such a view might be considered in a factual sufficiency
review, here we must view the evidence and reasonable inferences in the
light most favorable to the verdict. 
8. Additionally, even when holding the evidence legally sufficient, the
Court of Criminal Appeals has described cases with much stronger
evidence as "close." See Duff, 546 S.W.2d at 288 (appellant was
passenger, very strong marihuana odor in car, marihuana seeds on the
floor, conflicting stories, 30 pound box of marihuana in back seat with
more in trunk) (Phillips, J. dissented); Hernandez, 538 S.W.2d at 131
(appellant was driver, bag of marihuana in plain view on passenger side,
car belonged to uncle, drug paraphernalia near appellant) (Onion, P. J.,
and Roberts, J. dissented). Along the same lines, the Fourteenth Court
of Appeals recently described the knowledge element as "arguably
close" in a case even though (1) the accused was the sole occupant and
driver of the car; (2) the marihuana was found under the driver's seat;
(3) appellant had the only set of keys to the car; (4) appellant had been
driving the car for a couple of days; and (5) the drugs could be seen by
anyone opening the rear passenger door. Grant v. State, 989 S.W.2d
428, 434 (Tex. App.--Houston [14th Dist.] 1999, no pet.)
9. Having rendered a judgment of acquittal, we need not address
appellant's other issues presented for review. 
10. The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First
District of Texas at Houston, participating by assignment.